T.C. Summary Opinion 2004-14


UNITED STATES TAX COURT


GERRY ASHURST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

KEAN H. ASHURST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 161-03S, 162-03S.      Filed February 9, 2004.


Gerry Ashurst and Kean H. Ashurst, pro sese.

<u>Paul J. Krazeise, Jr.</u>, for respondent.


KROUPA, <u>Judge</u>:  These cases were heard pursuant to the provisions of section 7463.[1]  The decisions to be entered are not reviewable by any court, and this opinion should not be cited as

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

authority.  These cases arise from petitions[2] filed under section 6330(d) in response to Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (Determination Notices) by petitioners Gerry Ashurst (Mrs. Ashurst) and Kean H. Ashurst (Mr. Ashurst), wife and husband. The sole issue for decision is whether the Settlement officer abused his discretion in rejecting petitioners' Offer In Compromise (OIC).  We hold he did not.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in LaGrange, Kentucky, at the time they filed the petitions.

Petitioners filed their Federal income tax returns for 1991, 1992, 1993, 1994, 1995, and 1996, reflecting unpaid balances due. The balances were assessed and, with penalties and accrued interest, exceed $27,000.

On July 22, 2000, respondent issued a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing (Final Notice) with regard to petitioners' unpaid Federal income tax liabilities for 1991, 1992, 1993, 1994, 1995, and 1996, totaling $27,140.

---

[2] These cases have been consolidated for purposes of trial, briefing, and opinion.

In response to the Final Notice, petitioners requested a hearing pursuant to section 6330(b) (hearing) on August 7, 2000. On June 8, 2001, Appeals Officer William Smith of the Salt Lake City, Utah Appeals Office (Appeals Officer Smith) sent a letter to petitioners scheduling a hearing for July 12, 2001. The hearing was subsequently postponed because petitioners indicated that they would file an OIC with respect to their outstanding tax liabilities.

On July 3, 2001, petitioners submitted an OIC for their unpaid income tax liabilities for 1991, 1992, 1993, 1994, 1995, 1996, as well as 2000. On a Form 656, Offer in Compromise, petitioners indicated that Mr. Ashurst had been unemployed since July of 2000, that he had coronary surgery in August of 1998, that prevented him from engaging in physical activity, and that they had exhausted all their resources in seeking employment and maintaining the household. Petitioners offered to compromise their tax liabilities of approximately $27,000 for the years 1991 through 1996 and 2000 with a one-time payment of $3,500.

On July 9, 2001, Appeals Officer Smith informed petitioners that their offer was received and that an Offer examiner would contact them to evaluate their request. On January 16, 2002, Bonnie Griggs, a Revenue officer from the Ogden, Utah, Office of the Internal Revenue Service (Revenue Officer Griggs) sent petitioners a letter stating that the OIC had been reviewed and

that additional information was needed.  After receiving and reviewing petitioners' financial information, Revenue Officer Griggs, in a letter dated March 18, 2002, informed petitioners that she was unable to recommend that their offer be accepted because the information petitioners provided indicated that they could pay their entire income tax liabilities.[3]  The letter also stated that if petitioners did not agree with the statements, they could call her to discuss the offer or discuss other collection alternatives.

Petitioners and Revenue Officer Griggs further corresponded during March and May of 2002, in which petitioners submitted additional financial information to her.  On May 29, 2002, the Revenue officer sent petitioners a letter stating that on the basis of the new information provided, she had recalculated petitioners' financial situation.  Because petitioners' projected income and net assets, as recalculated, still enabled them to pay their tax liabilities in full, she would not recommend their

---

[3] Revenue Officer Griggs determined that, after allowing for necessary living expenses, petitioners' monthly income and realizable assets enabled them to make a maximum payment of $1,168 per month. The Revenue officer stated that because she was unable to reach petitioners she used their Dec. 31, 2000, income to compute their monthly income.  The officer determined that petitioners had a total monthly income of $6,486 and expenses of $5,318 leaving an ability to pay $1,168 per month over a period of 4 years.

offer for acceptance.[4]  In the letter, she also suggested that petitioners enter into a regular installment agreement for $836 per month.

On June 3, 2002, petitioners faxed Revenue Officer Griggs a letter stating:

> I am unwilling and unable to accept this evaluation by your office.  I currently have no earnings other than my wife's income and due to my heart condition current prospects for employment are very slim.  * * * I have explained my circumstances to you in writing and verbally and consider you (sic) lack of understanding as nothing more than harassment in this case.  Therefore I am requesting that this case be forwarded back to Appeals (Bill Smith).

An Appeals hearing was held with Mr. Ashurst on behalf of petitioners on July 22, 2002.  The hearing focused on petitioners' OIC as well as other collection alternatives.  It was agreed that Mr. Ashurst would inform Appeals Officer Smith about his future work prospects.  No such information was provided, however.  Further, subsequent attempts to contact petitioners failed because no working phone numbers were available.

On December 2, 2002, Appeals Officer Smith sent petitioners the Determination Notices rejecting their OIC and concluding that collection could proceed.  The Determination Notices stated that

---

[4] After considering the additional information provided by petitioners, Revenue Officer Griggs determined that petitioners would be able to pay $836 per month based upon petitioners' monthly income of $5,257 and monthly expenses of $4,421.

the OIC was rejected because petitioners could pay their tax liabilities in full.

On January 3, 2003, petitioners filed petitions with this Court in response to the Determination Notices. A trial hearing was held on September 8, 2003, in Louisville, Kentucky, at which petitioners contested respondent's rejection of their OIC, stated that their circumstances have changed dramatically, and asked the Court to remand their case to Appeals for a reconsideration of their offer.

By order dated November 13, 2003, this Court remanded petitioners' 1991, 1992, 1993, 1994, 1995, 1996, and 2000, income tax years to the Commissioner for the purpose of considering petitioners' OIC, taking into consideration petitioners' change in circumstances. The order also allowed petitioners, if they wished to do so, to offer another collection alternative pursuant to section 6330(c)(2)(A)(iii). The parties were to inform the Court of the outcome of these proceedings by January 15, 2004.

Pursuant to the order, petitioners submitted additional information to respondent, including an updated itemization of income and expenses as well as other financial documents.

On December 30, 2003, after a reconsideration of petitioners' financial information, Settlement Officer John N. Brandon, Jr., of the Louisville, Kentucky, Appeals Office (Settlement Officer Brandon) sent petitioners a letter rejecting

their OIC.  In the letter, Settlement Officer Brandon stated that, based on the data petitioners submitted, it appeared that petitioners could make monthly payments in the amount of $439 and could therefore pay their liability in full within the limitation period.  Settlement Officer Brandon also offered petitioners an installment agreement as a collection alternative (Installment Agreement).  The Installment Agreement provided for the payment of $439 per month for 13 months and $604 per month thereafter,[5] until the liability was paid in full.

On January 3, 2004, petitioners sent, via facsimile, a letter to respondent that we interpreted as petitioners' rejection of the Installment Agreement proposed by Settlement Officer Brandon.  The issue now before us, therefore, is whether Settlement Officer Brandon abused his discretion in rejecting petitioners' OIC and allowing collection by levy action to proceed.

### Discussion

Before a levy may be made on any property or right to property, a taxpayer is entitled to a fair hearing before an impartial officer of the Appeals Office.  Secs. 6330(a) and (b), and 6331(d).  If the taxpayer requests a hearing, he may raise at that hearing any relevant issue relating to the unpaid tax or the

---

[5] Petitioners are expected to have satisfied certain medical expenses after 13 months.

proposed levy. Sec. 6330(c)(2). Such issues include any appropriate spousal defense, challenges to the appropriateness of collection, and offers of collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A). After the hearing, a determination is made that addresses those issues raised by the taxpayer, verifies that all requirements of applicable law and administrative procedures have been met, and balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Sec. 6330(c)(3)(C).

The sole issue raised by petitioners both at the hearing and at trial is respondent's consideration of their OIC. We must decide, therefore, whether the Settlement officer's rejection of petitioner's OIC was proper.

A. Standard of review

Because the validity of petitioners' underlying tax liabilities is not in issue, we review the administrative determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-183 (2000). In doing so, we do not conduct an independent review of what would be an acceptable offer in compromise. Rather, we review only whether the Settlement officer's refusal to accept petitioners' OIC was arbitrary, capricious, or without

sound basis in fact or law.  See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

B.   <u>Petitioners' Offer</u>

Section 7122(a) authorizes a compromise of a taxpayer's Federal tax liability.  An OIC may be accepted where there is doubt as to liability or collectibility, or where it would promote effective tax administration.  Sec. 301.7122-1T(b), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39024 (July 21, 1999).  One of the factors considered in determining whether to accept or reject an OIC is whether the collection of the full liability would result in economic hardship to the taxpayer.  Sec. 302.7122-1T(b)(4)(i), Temporary Proced. & Admin. Regs., <u>supra</u>.  Economic hardship is defined as the inability of the taxpayer to pay his or her reasonable living expenses.  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

Throughout the consideration of their OIC, petitioners maintained that they do not have sufficient income to pay their liabilities in full.  After reviewing petitioners' financial situation, however, the Settlement officer determined that their financial situation enabled them to pay the entire tax liability within a reasonable time.  This determination was based on the information petitioners provided to the Settlement officer as to their income and expenses.  Petitioners' financial information indicated that both petitioners had gainful employment and that

their monthly income exceeded their necessary living expenses, thereby allowing the full payment of their liabilities.

In reviewing petitioners' OIC, we note that the Settlement officer used information that was favorable to petitioners. For example, the Settlement officer allowed petitioners monthly living expenses that exceeded the amount they claimed on their Form 433-A, Collection Information Statement For Individuals. Moreover, in determining petitioners' income, the Settlement officer used income figures that were less than those actually reported by petitioners. Notwithstanding his use of these favorable estimates, the Settlement officer still concluded that petitioners could pay their entire tax liabilities in full.

We have reviewed the entire record, including the financial information presented to the Settlement officer, and cannot find that the Settlement officer's determination rejecting petitioners' OIC was an abuse of discretion. See Van Vlaenderen v. Commissioner, T.C. Memo. 2003-346; Crisan v. Commissioner, T.C. Memo. 2003-318; Willis v. Commissioner, T.C. Memo. 2003-302. Accordingly, collection by levy of petitioners' unpaid tax liabilities reflected in the Determination Notices may proceed.

To reflect the foregoing,

> Decisions will be
> entered for respondent.